**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CRAIG CANTER,** | |
| Plaintiff, | No. 1:18-cv-07375 |
| v. | Honorable Jorge L. Alonso |
| **AT&T UMBRELLA BENEFIT PLAN NO. 3, and AT&T SERVICES, INC. as Plan Administrator,** | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Sarah Bryan Fask, Esq.
Admitted *pro hac vice*
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000
sfask@littler.com

Kyle J. Mueller, Esq.
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, IL 60654
312.795.3229

*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

I.   REASONS IN SUPPORT OF THE MOTION ................................................................ 1

II.  STATEMENT OF UNDISPUTED FACTS ................................................................. 2

III. ARGUMENT ............................................................................................................. 2

    A.   Summary Judgment Standard ............................................................................. 2

    B.   COUNT I: The Decision To Discontinue STD Benefits Was Not Arbitrary and Capricious, So Defendants Are Entitled To Summary Judgment. ................. 2

        1.   The arbitrary and capricious standard of review applies to Canter's ERISA § 502(a)(1)(B) claim for STD benefits ........................................ 3

        2.   Sedgwick's denial of Canter's claim for STD benefits was not arbitrary and capricious ..................................................................... 3

        3.   The Plan reasonably relied on independent medical reviewers ............... 7

        4.   Canter's subsequent approval for additional leave time as a job accommodation does not provide objective medical evidence to support eligibility for STD benefits .......................................................... 9

    C.   COUNT II and AT&T SERVICES' COUNTERCLAIM: AT&T Services Is Entitled To Judgment On Its Unjust Enrichment Claim And, Relatedly, In Its Favor On Canter's Equitable Estoppel Defense ...................................... 11

IV.  CONCLUSION ...................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Beard v. Whitley County REMC,*
    840 F.2d 405 (7th Cir. 1988) ................................................................................2

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................................2

*Davis v. Unum Life Ins. Co. of Am.,*
    444 F.3d 569 (7th Cir. 2006) ............................................................................7

*Dew v. Wickes Lumber Co.,*
    No. 95 C 355, 1996 WL 559962 (N.D. Ill. Sept. 30, 1996).............................7

*Edwards v. Briggs & Stratton Ret. Plan,*
    639 F.3d 355 (7th Cir. 2011) .........................................................................4, 5

*Feinberg v. RM Acquisition, LLC,*
    629 F.3d 671 (7th Cir. 2011) ............................................................................3

*Gannon v. Metro. Life Ins. Co.,*
    360 F.3d 211 (1st Cir. 2004).............................................................................11

*Gazarkiewicz v. Town of Kingsford Heights, Ind.,*
    359 F.3d 933 (7th Cir. 2004) ............................................................................2

*Green v. Union Sec. Ins. Co.,*
    646 F.3d 1042 (8th Cir. 2011) .........................................................................11

*Hendricks-Robinson v. Excel Corp.,*
    154 F.3d 685 (7th Cir. 1998) ............................................................................9

*Holmstrom v. Metro. Life Ins. Co.,*
    613 F.3d 758 (7th Cir. 2010) ............................................................................8

*Jenkins v. Price Waterhouse Long Term Disability Plan,*
    564 F.3d 856 (7th Cir. 2009) ............................................................................6

*Larson v. United Healthcare Ins. Co.,*
    723 F.3d 905 (7th Cir. 2013) ............................................................................9

*Mancini v. Providence by & through Lombardi,*
    909 F.3d 32 (1st Cir. 2018)...............................................................................10

*Militello v. Cent. States, Southeast & Sw. Areas Pension Fund,*
    360 F.3d 681 (7th Cir. 2004) ...................................................................................4

*Nebraska v. Wyoming,*
    507 U.S. 584 (1993)................................................................................................2

*Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan,*
    195 F.3d 975 (7th Cir. 1999) ......................................................................4, 10, 11

*Reilly v. Blue Cross & Blue Shield United of Wisconsin,*
    846 F.2d 416 (7th Cir. 1988) .................................................................................11

*Reimann v. Anthem Ins. Cos.,*
    No. 1:08CV0830DFH-DML, 2008 WL 4810543 (S.D. Ind. Oct. 31, 2008)...........7

*Semien v. Life Ins. Co. of N. Am.,*
    436 F.3d 805 (7th Cir. 2006) ..............................................................................3, 6

*Stahly v. S. Bend Pub. Transp. Corp.,*
    No. 3:10-CV-257-JVB, 2013 WL 55830 (N.D. Ind. Jan. 3, 2013) .........................10

*Williams v. Aetna Life Ins. Co.,*
    509 F.3d 317 (7th Cir. 2007) ...................................................................................8

*Wolfe v. Metro. Life Ins. Co.,*
    No. 13-CV-159-JPG-DGW, 2014 WL 1304283 (S.D. Ill. Mar. 31, 2014) ..............7

**Federal Statutes**

42 U.S.C. § 12102(2) ....................................................................................................10

## I.      REASONS IN SUPPORT OF THE MOTION

Defendants AT&T Umbrella Benefit Plan No. 3 (the "Plan") and AT&T Services, Inc. ("AT&T Services") are entitled to summary judgment on all claims in this case. As to Count I against the Plan and AT&T Services as Plan Administrator, Plaintiff fails to meet his burden to show that the Plan's denial of short-term disability ("STD") benefits beyond July 2, 2017 was arbitrary and capricious. The record evidence shows that the Plan's claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), terminated STD benefits when Canter did not provide objective medical evidence to show he remained unable to perform his job and therefore did not meet the Plan's definition of Disability to qualify for further STD benefits.[1] All independent medical reviewers to consider Canter's claim agreed with this. It was a reasonable decision. Thus, summary judgment for Defendants on this claim is appropriate.

In Count II, Plaintiff asserts a common law equitable estoppel claim against AT&T Services, seeking to stop recovery of a $31,543.90 overpayment of wages it made to him in February 2018 as the payroll administrator for his employer, Illinois Bell Telephone Company ("Illinois Bell"). The undisputed record evidence shows that on February 9, 2018, AT&T Services accidentally issued a payment to Plaintiff for wages from Illinois Bell in the amount of $31,543.90 for the period of July 7, 2017 through February 5, 2018, even though Plaintiff did not work during that period. Seventeen days later, AT&T Services recognized the error and sent a corrected pay statement. And, by February 26, 2018, AT&T Services had instructed Canter on how to repay the money. Despite repeated requests for repayment, Canter has not done so. It is not equitable

---

[1] Despite also including in his prayer for relief mention of long-term disability ("LTD") benefits, the Court has already ruled that Canter cannot recover LTD benefits here because he has not filed a claim with the Plan for such benefits. (*See* Doc. 64 at 2-3 ("an ERISA claim for LTD benefits has not yet accrued. Before plaintiff's claim for LTD benefits accrues, he must apply for the benefits and, if denied, exhaust his administrative remedies.").)

for Canter to retain wages he did not earn, and the Court should enter judgment requiring that he return the overpayment. There is no evidence that AT&T Services made this erroneous wage payment as a "knowing misrepresentation" and Plaintiff's claimed misunderstanding of the nature of the payment (despite communications to him otherwise) falls short as a matter of law.

Similarly, AT&T Services is entitled to summary judgment on its unjust enrichment Counterclaim. The undisputed evidence shows AT&T Services erroneously issued a gross wage payment to Canter of $31,543.90 to which he was not entitled. It would be unjust and violate the fundamental principles of equity for Canter to retain this overpayment when he admittedly did not work during the time period for which AT&T Services paid him wages.

## II.      STATEMENT OF UNDISPUTED FACTS

Defendants incorporate the Statement of Undisputed Material Facts ("SOF"), submitted contemporaneously with this Memorandum of Law.

## III.     ARGUMENT

### A.      Summary Judgment Standard.

Summary judgment is proper if the movant demonstrates the absence of a genuine dispute and the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). In reviewing cross-motions for summary judgment, the court views all facts and draws all reasonable inferences in a light most favorable to the party against whom the motion is made. *Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 939 (7th Cir. 2004).

### B.      COUNT I: The Decision To Discontinue STD Benefits Was Not Arbitrary

and Capricious, So Defendants Are Entitled To Summary Judgment.[2]

1. **The arbitrary and capricious standard of review applies to Canter's ERISA § 502(a)(1)(B) claim for STD benefits.**

Where, as here, an ERISA plan vests the claims administrator with discretionary authority to construe the plan's terms or determine benefit eligibility, the arbitrary and capricious standard applies to this court's review of the administrator's benefit determinations. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006); (*see also* SOF ¶¶ 2 (Plan Administrator has "the sole and absolute discretion" to decide claims for benefits and allowing delegation of that authority to any appropriate party including a claims administrator),3-4 (claim decision authority delegated to Sedgwick which "has the discretion to determine whether you have a disability that qualifies you for [STD] Benefits").)  Plaintiff agrees. (*See* Doc. 1 at ¶¶ 62-64 (pleading Defendants' actions were "arbitrary and capricious").) A claims administrator's decision "may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Semien*, 436 F.3d at 812.

2. **Sedgwick's denial of Canter's claim for STD benefits was not arbitrary and capricious.**

To continue receiving STD benefits, the terms of the Plan required Canter to provide objective medical information to Sedgwick (the Plan's Claims Administrator) confirming that he was unable to perform the duties of his job with or without a reasonable accommodation, and Sedgwick, in its sole discretion, had to agree with this evidence.  (*See* SOF ¶¶ 5 (employee is considered disabled for the purposes of STD benefits if Sedgwick, "at its sole discretion,

---

[2] The proper defendant for Canter's § 502(a)(1)(B) denied benefits claim is only the Plan. *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011) ("The proper defendant in a suit for benefits under an ERISA plan is, in any event, normally the plan itself . . . because the plan is the obligor.").  Because the Plan Administrator is not a proper defendant, Canter's § 502(a)(1)(B) claim against AT&T Services should be dismissed as a matter of law.

determines that [the employee is] disabled by reason of sickness, pregnancy, or an off-the job illness or injury that prevents [the employee] from performing the duties of [the employee's] job . . . with or without reasonable accommodation"), 6 (claim for STD benefits "must be supported by objective Medical Evidence" which is "[o]bjective medical information sufficient to show that the Participant is Disabled, as determined at the sole discretion of the Claims Administrator"; "[o]bjective medical information includes, but is not limited to, results from diagnostic tools and examinations performed in accordance with the generally accepted principles of the health care profession.").) Sedgwick rationally concluded, based on abundant record evidence,[3] that Canter failed to meet that burden after July 6, 2017, which means his denial of benefit claim fails as a matter of law. *Militello v. Cent. States, Southeast & Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004); *see also Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (explaining that the reviewing court should affirm a decision under the arbitrary and capricious standard if "a plan administrator's decision has rational support in the record").

The record before Sedgwick showed that Canter originally stopped working February 6, 2017 based on dizziness and headaches, and his physician recommended "medical leave" through March 15, 2017 while his physician was awaiting the results of various tests. (*See* SOF ¶¶ 13-16, 18-19, 21-22, 24.) Based on medical evidence Canter submitted, including Canter's physicians' indications that they were still awaiting test results, Sedgwick approved STD benefits through May 29, 2017. (SOF ¶¶ 17, 20, 23, 25.)

---

[3] Where a claim is reviewed under the arbitrary and capricious standard, the district court is confined to review of the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981–82 (7th Cir. 1999).

However, beginning in April 2017, Canter's treating provider was no longer recommending in visit notes that Canter remain off work. (*Compare* SOF ¶¶ 16, 19, *with* SOF ¶¶ 22, 24, 26, 30.) And, by July 3, 2017, record evidence showed that acupuncture, herbal remedies, and propranolol had led to "significant improvement" of Canter's headaches, to the point where he only got "mild headaches lasting an hour or so every three days" that did not even require treatment. (*See* SOF ¶¶ 28-29.) His dizziness had "resolved" so that he could perform normal activities of daily living without difficulty. (*Id.*) Based on this improvement, Canter's treating provider increased his follow-up interval from 3-4 weeks, which had been required since his symptoms began, to an interval of 2-3 months. (*Compare* SOF ¶¶ 18, 22, 24, 26, *with* SOF ¶ 30.)

While the record reflects that Canter continued to make subjective complaints to his care providers of headaches and dizziness with exertion during this time (*compare* SOF ¶¶ 28-29), these were solely subjective complaints without any supporting *objective medical evidence*. Instead, Canter's physical examination on July 3, 2017, was normal with the exception of "mild sway on [a balance] test" (*see* SOF ¶ 29), and his routine fasting labs were largely normal[4] (SOF ¶ 39). Canter's chest x-rays, taken on July 19, 2017, were normal. (*Id.*) Canter's August 24, 2017 stress echocardiogram was normal. (*Id.*) Further, on September 12, 2017, a physical examination of Canter and noted that his "PFT" (Pulmonary Function Test) was normal. (*See* SOF ¶ 42.)

Further, *three independent reviewing physicians* asked to review Canter's medical records as part of the evaluation of his STD claim all concluded that there was no objective medical evidence to conclude that Canter was disabled and could not perform the duties of his job. Dr. Duvall, Board Certified in Occupational Medicine, concluded that "the objective

---

[4] Although the fasting labs showed that Canter had slightly elevated chloride levels, low HDL cholesterol, high triglycerides, and a high cholesterol to HDL ratio (*see* SOF ¶ 39), his treating provider never indicated that these impacted his ability to do his job.

findings . . . [were] insufficient to support [Canter's] inability to do his usual heavy job or need restrictions and limitations for [the] review period." (SOF ¶ 35.) Dr. Friedman, Board Certified in Internal Medicine and Neurology, did not see any "evidence in the available medical records" justifying Canter's alleged inability to perform his job. (SOF ¶¶ 48-50.) Likewise, Dr. Jiva, Board Certified in Pulmonary Disease, found that Canter's studies were "essentially normal" and that nothing supported a finding of disability. (SOF. ¶¶ 45-57.)

Thus, when Sedgwick made the decision to uphold the denial of STD benefits after July 6, 2017, it had in hand notes from Canter's treating providers' showing Canter having "resolved" headaches and "significant improvement" in dizziness, no longer recommending leave from work, and setting follow-up appointments out for months at a time. It also had in hand normal physical examination results, normal fasting labs, normal chest x-rays, and a normal stress echocardiogram. It further had in hand opinions from *three independent reviewing physicians* that Canter was not disabled from performing his job. In contrast, Canter had offered absolutely no objective medical evidence supporting a finding that he could not do his job, resting entirely on subjective complaints to his care providers of headaches and dizziness with exertion.[5] Based on this record, there is simply no way that Sedgwick's denial of ongoing STD benefits can be cast as a decision lacking "a reasoned explanation, based on the evidence." *Semien*, 436 F.3d at 812 (citation omitted). Because of the substantial record evidence supporting the conclusion that Canter was not disabled as defined under the terms of the Plan, Sedgwick's decision to discontinue Canter's STD benefits after July 6, 2017 cannot be considered arbitrary and capricious. *Compare, e.g.*, *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d

---

[5] The Plan specifies that "a diagnosis that is based largely or entirely on self-reported symptoms will not [generally] be considered sufficient to support a finding of Disability." (SOF ¶ 7.)

856, 861 (7th Cir. 2009) (decision to terminate benefits not arbitrary and capricious where health professionals had reviewed the record and found that the plaintiff could return to work and the conclusion was supported by objective medical evidence); *Wolfe v. Metro. Life Ins. Co.*, No. 13-CV-159-JPG-DGW, 2014 WL 1304283, at *5 (S.D. Ill. Mar. 31, 2014) (decision to terminate benefits was not arbitrary and capricious where it was supported by independent medical reviewer's analysis of evidence in the record, the reviewer attempted to contact treating physicians and was able to speak with one treating physician who agreed with his opinion, and claimant did not submit medical evidence in support of ongoing disability as required by the terms of the plan); *Dew v. Wickes Lumber Co.*, No. 95 C 355, 1996 WL 559962, at *3 (N.D. Ill. Sept. 30, 1996) (decision to terminate disability benefits not arbitrary and capricious where based on an independent medical consultants' report and a rational connection existed between the relevant evidence and the final decision).

### 3. The Plan reasonably relied on independent medical reviewers.

Notably, ERISA does not require that independent peer review physicians physically examine Canter, that Sedgwick or the reviewing physicians speak directly to Canter's treating providers, or that Sedgwick give deference to Canter's treating providers over independent medical reviews. *See e.g.*, *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) (citation omitted) ("It is reasonable . . . for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations."); *Reimann v. Anthem Ins. Cos.*, No. 1:08CV0830DFH-DML, 2008 WL 4810543, at *24 (S.D. Ind. Oct. 31, 2008) (citation omitted) ("[N]othing in the statute or regulations requires either Anthem or the independent physicians evaluating Mrs. Reimann's claim to

7

contact her or her treating physicians."),[6] *Holmstrom v. Metro. Life Ins. Co.*, 613 F.3d 758, 774-75 (7th Cir. 2010) (citing *Black & Decker*, 538 U.S. at 834) (explaining that while the plan "may not arbitrarily refuse to credit a claimant's reliable evidence, including opinions of a treating physician," they are "entitled to disagree" if there is "evidence in the record providing a reasoned basis for doing so"); *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 326 (7th Cir. 2007).

Further, in this case the opinions of the independent medical reviewers do not even contradict information submitted by Canter's treating providers. While Canter has repeatedly argued that he remained eligible for STD benefits because he was "not cleared to return to work," nothing in the record before Sedgwick—including the opinions of his treating physicians—indicates that any of them concluded he could not perform the duties of his job. To the contrary, the last mention of Canter's symptoms causing functional limitations sufficient to warrant being off work is when his treating provider recommended, on March 8, 2017, that he remain on "medical leave" for four more weeks, or through April 5, 2017. (*See* SOF ¶ 19.)  STD benefits were approved beyond that date. (SOF ¶¶ 17, 20, 23, 25.) Subsequent medical examinations all document Canter's decreasing symptoms and normal objective medical tests, without mentioning any need for "medical leave" or time off work after that time. (*Compare* SOF ¶¶ 22, 24, 26, 28).) And, Dr. Keller, one of Canter's own treating physicians, told Dr. Jiva, the independent pulmonary disease physician, that Canter was not disabled from a pulmonary perspective. (SOF ¶¶ 45-46.)

---

[6] Undisputed evidence shows independent medical reviewers attempted to contact Canter's treating physicians. (*See* SOF ¶¶ 33, 46, 49.) Likewise, it shows National Medical Review alerted Canter's treating physicians in advance that Drs. Jiva and/or Friedman would be calling. (*See* SOF ¶ 44.) This process was reasonable, as it resulted in at least one successful communication, permitting Dr. Jiva to talk with Dr. Kellar. (*See* SOF ¶ 46.)

**4. Canter's subsequent approval for additional leave time as a job accommodation does not provide objective medical evidence to support eligibility for STD benefits.**

In his Complaint, Canter attempts to confuse the issues by alleging that he applied for a job accommodation in January 2018, Sedgwick approved him for a job accommodation between July 2017 and January 2018, and that "[o]n information and belief [Sedgwick] concluded that he could not return to his job based on the medical records submitted by his physicians and the absence of any physician report stating that Canter was able to perform his essential job duties." (Doc 1 ¶ 53.) Even assuming the record evidence supported those allegations (which it does not), they are immaterial as an ERISA plan's decisions regarding eligibility for plan benefits and an employer's consideration of job accommodations are factually and legally different.

To be eligible for STD benefits under the Plan, Canter must meet the Plan terms. He must be "disabled by reason of sickness, pregnancy, or an off-the job illness or injury that *prevents* [him] from performing the duties of [his] job . . . with or without reasonable accommodation." (SOF ¶ 5.) And, the terms of the Plan require him to support his STD claim with objective medical evidence, or "results from diagnostic tools and examinations performed in accordance with the generally accepted principles of the health care profession." (SOF ¶ 6.) In making determinations of eligibility for Plan benefits, the claims administrator is bound as a fiduciary for the Plan to apply the terms of the Plan as written. *See Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 912 (7th Cir. 2013) (citing 29 U.S.C. § 1104(a)(1)(D)) ("ERISA fiduciaries must act in accordance with the documents and instruments governing the plan.").

By contrast, the purpose of a reasonable job accommodation under the ADA is to allow an employee to perform the essential functions of the job. *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685 (7th Cir. 1998) ("'reasonable accommodation' element of the Act imposes a duty upon employers to engage in a flexible, interactive process…[to] discuss accommodations which

might enable the employee to continue working."). The ADA provides its own definition of disability, which is a physical or mental impairment that *substantially limits* a major life activity. 42 U.S.C. § 12102(2). Although time off work can be a job accommodation, no "objective medical evidence" is required to support a claim of disability under the ADA. *Compare Mancini v. Providence by & through Lombardi*, 909 F.3d 32, 42 (1st Cir. 2018) (medical evidence not required to establish a disability under the ADA). And, unlike the terms of the Plan—which *require* Canter to submit relevant medical information supporting his claim—the ADA expressly discourages such a thorough, broad-ranging inquiry. Instead, it authorizes medical examination or inquiry only where it is "job-related and consistent with business necessity," and expressly cautions the inquiry must be "no broader or more intrusive than necessary." *Stahly v. S. Bend Pub. Transp. Corp.*, No. 3:10-CV-257-JVB, 2013 WL 55830, at *7 (N.D. Ind. Jan. 3, 2013) (citing *Conroy v. New York State Dept. of Corr. Serv.,* 333 F.3d 88, 97-98 (2d Cir. 2003)).

As a result, even if Canter's employer was deferential and generous in granting him time off work as a job accommodation for an impairment that arguably substantially limited a major life activity – even if based on consideration of medical evidence by Sedgwick – that does not show, as Canter must under the Plan, that he provided objective medical evidence confirming he had an impairment that *prevented* him from performing *his job*. Moreover, the Plan's and the Court's review of Canter's STD claim is limited to the evidence before the claims administrator at the time of its final decision. *Perlman*, 195 F.3d at 981–82. Canter cannot point to anything in the record before Sedgwick when it denied him ongoing STD benefits that shows he was permitted additional time off work because of objective medical evidence confirming he had an impairment that prevented him from doing his job. Thus, whether or not Canter was approved for a job accommodation of additional time off work has no bearing on whether the Plan's denial of

STD benefits after July 6, 2017 was arbitrary and capricious. *Perlman*, 195 F.3d at 981–82.

At best, Canter suggests that someone else could make another decision. However, the mere fact that someone else could reach a different conclusion is not sufficient to render a decision arbitrary and capricious. *Compare Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1053 (8th Cir. 2011) (finding no abuse of discretion simply because a reasonable person could reach another conclusion); *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir. 2004) (finding no abuse of discretion simply because reasonable minds could differ about the analysis); *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 420 (7th Cir. 1988) (alteration in original) (citations omitted) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of [an ERISA fiduciary].").

In summary, the Plan's decision to deny Canter's STD claim after July 6, 2017 is well reasoned and is overwhelmingly supported by the evidence of the administrative record. The Plan thoroughly reviewed his contentions, and retained independent third-party Board certified specialists to review Canter's claim. These medical specialists unanimously concurred that Canter's medical documentation provided no support for his alleged inability to perform his occupation as the Plan requires. Further, Canter's objective complaints after July 6, 2017 are unsupported by measured tests and objective evidence to support their conclusions, which is insufficient under the Plan. (*See* SOF ¶ 6.)  The Plan's decision to terminate Canter's STD benefits was not arbitrary and capricious, and this Court should affirm the Plan's decision and grant summary judgment to the Plan and AT&T Services on Count I of the Complaint.

**C.     COUNT II and AT&T SERVICES' COUNTERCLAIM: AT&T Services Is Entitled To Judgment On Its Unjust Enrichment Claim And, Relatedly, In Its Favor On Canter's Equitable Estoppel Defense.**

The undisputed record evidence shows that AT&T Services erroneously made an overpayment of wages to Canter, clearly communicated that mistake to Canter within days and

instructed him how to repay the funds, yet Canter has improperly kept the money.  There is no evidence of a "knowing misrepresentation" from AT&T Services about Canter's entitlement to keep these erroneously paid wages, Canter has unjustly retained the money, and AT&T Services is entitled to judgment on both Count II and its Counterclaim.

In Count II, Canter alleges equitable estoppel. To prevail, Canter must prove: (1) AT&T Services made a knowing misrepresentation; (2) in writing; (3) with his reasonable reliance on that misrepresentation; (4) to his detriment. *See Coker v. TWA*, 165 F.3d 579, 586 (7th Cir. 1999).  For its unjust enrichment counterclaim, AT&T Services must establish that Canter received a benefit and unjustly retained it, so that his retention of that benefit violates fundamental principles of equity. *HPI Health Care Servs., Inc. v. Mt. VemonHosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Here, it is undisputed AT&T Services paid Canter $31,543.90 in wages on February 9, 2018. (*See* SOF ¶¶ 64, 66.) The pay statement described this money as "Regular" wages and "Holiday Allowance."  (SOF ¶ 65.)  AT&T Services discovered the error before the next pay cycle and, on February 23, 2018, issued a new pay statement correcting it. (*See* SOF ¶ 67.)  Just 17 days after the error, AT&T Services wrote Canter and explained the overpayment and instructed him on how to repay it.  (SOF ¶¶ 68-69.) AT&T Services followed up with subsequent communications seeking repayment. (SOF ¶ 70.) Nonetheless, Canter admittedly has kept the money and has made no effort to pay it back. (SOF ¶ 72.)

The undisputed record evidence shows AT&T Services generated the payment in error due to a coding mistake. When Canter completed his Denial of Disability Benefits Leave (DDBL), the DDBL code was removed on February 5, 2018, but there was a short gap before a new time code was entered. (SOF ¶¶ 62, 64.)  That gap corresponded with the close of the

payroll period and in the absence of a new code, the payroll system defaulted to issue regular

wages for Plaintiff for July 7, 2017 through February 5, 2018. (SOF ¶ 64.)  The pay statement

shows gross regular and holiday wages for this entire period of $31,543.90.  (SOF ¶ 65.)  The

fact that this was an incorrect payment of wages given that it was for a time when no work was

performed by Canter was thus clear from the pay statements, and certainly clear from AT&T

Services' subsequent communications days later alerting Canter to the overpayment.

Canter has unjustly retained this benefit, as Canter admits he had not performed any work

for Illinois Bell during the time period covered by the wage payment. (*See* SOF ¶ 55.) In fact,

Canter had not worked since February 6, 2017. (*Id.*)

Under these facts, Canter cannot establish any "knowing misrepresentation" in writing

about this overpayment and his ability to keep it. *Coker*, 165 F.3d at 586.  The facts are crystal

clear that this was an inadvertent payroll error, and nothing about it was "knowing."  Further,

nothing about the written communications surrounding the payment makes any "representation"

about Canter's entitlement to keep the money.  If anything, the pay statement's notation that it

was a payment of "Regular" wages would have alerted Canter to the opposite – this was money

he was not due because he had not been working.  And, AT&T Services' written

communications alerting him to the error and requesting repayment days later emphasized this.

Accordingly, there is no evidence of a "knowing misrepresentation" to support the first element

of Plaintiff's estoppel claim.  *See, e.g.*, *Coker v. Transworld Airlines Inc.*, 959 F. Supp. 946, 953

(N.D. Ill. 1997) (finding inadvertent clerical error in failing to remove plaintiff from insurance

coverage was not a "knowing representation" sufficient to support equitable estoppel).

Further, Canter cannot show he reasonably relied on any misrepresentation. *See Coker,*

959 F. Supp. at 956 (citation omitted) ("Reasonable reliance in this context is the 'reasonable

reliance of a reasonable man under all the circumstances pertaining to his condition of employment known or which should have been known to him.'").  The pay statement describes the payment as "Regular" wages (far in excess of what he received in STD benefits) and Canter admits that he had not performed any compensable work during the time period covered by the payment. (*See* SOF ¶¶ 55, 65.)  Grasping at straws, Canter contends he believed the February 9, 2018 overpayment to be some form of paid leave. Yet it is undisputed that when Canter received the February 9, 2018 overpayment, he had not been notified of any paid leave time. (*Compare* SOF ¶ 78.) Further, nothing in the February 9, 2018 pay statement references any paid leave. (*See* SOF ¶ 65.) In fact, the pay statement is similar to prior pay statements for wages Canter earned *while working* in early 2017. (*See* SOF ¶ 65.) While Canter was later notified on February 19, 2018, that he was approved for additional time off work, the approval letter does not indicate this would be a *paid* leave. (*See* SOF ¶ 78.) Indeed, Canter admits that *no one* ever told him his additional time off work granted as a job accommodation would be paid. (*See id.*) Accordingly, the undisputed facts also confirm that Canter cannot show any reasonable justification for believing he was entitled to keep the overpaid funds.

Still further, Canter cannot show that any claimed reliance on receiving the payment was to his detriment. There were only days between the mistake and the communications correcting it. On February 13, 2018, after Canter received the mistaken payment, he combined the net amount of the check ($14,891.84) with $26,000 that was in his account and purchased a $40,000 certificate of deposit of which he is the beneficiary.  (SOF ¶ 74.)  Although Canter testified that he put this money aside to repay a loan to his mother, the record evidence reflects that he tucked it away for safekeeping for his own benefit, where it remains, untouched.  (*See id.*)  Further, he did so *before*  he received the February 19, 2018 letter informing him that he was approved for

additional time off work as a job accommodation that he says led him to believe he could keep the money. The undisputed facts show no detrimental reliance here.

For these reasons, Canter's equitable estoppel claim fails as a matter of law. Similarly, the undisputed evidence shows Canter's unreasonable and unjust behavior in retaining the money. Despite a corrected pay statement tendered days after the error, multiple letters requesting repayment and at least one telephone call seeking repayment (SOF ¶ 71), Canter has still not repaid any portion of the money. (SOF ¶ 72.) Under these undisputed circumstances, it would be unjust and violate the fundamental principles of equity for Canter to retain a substantial wage payment when he admittedly performed no work during that time period. Accordingly, AT&T Services is entitled to judgment ordering Canter to repay to it the gross amount of $31,543.90.[7]

## IV.  CONCLUSION

For the reasons stated herein, judgment on Count I should be entered in favor of the Plan and AT&T Services, and judgment on Count II and the Counterclaim should be entered in favor of AT&T Services, with judgment entered for AT&T Services in the amount of $31,543.90 plus interest.

---

[7] AT&T Services repeatedly explained to Canter that if he did not repay the money by the end of 2018, he would need to repay the gross amount of $31,543.90, not just the net payment of $14,981.84. (SOF ¶ 69.) Specifically AT&T Services informed Canter that if Canter had repaid the money in 2018 as requested, "taxes previously withheld [would have been] deducted from [his] balance lowering the amount due." (*Id.*) AT&T Services further informed him that if he timely repaid it would report the difference on a Corrected Wage and Tax Statement, permitting Canter to potentially recover the withheld amounts directly from taxing authorities. (*Id.*) Because he did not, AT&T Services was required to submit the taxes withheld to the federal and state governments for the 2018 tax year and AT&T Services is entitled to reimbursement of the full gross amount. (*See id.*; *see also* SOF ¶ 73.)

Respectfully submitted,


/s/Sarah Bryan Fask
Sarah Bryan Fask


Sarah Bryan Fask, Esq.
Admitted *pro hac vice*
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000
sfask@littler.com

Kyle J. Mueller, Esq.
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, IL 60654
312.795.3229

Dated: August 14, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 14th day of August 2020, the foregoing *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

*/s/ Sarah Bryan Fask*
Sarah Bryan Fask